BRIAN M. SCHAEFER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schaefer v. Commissioner
Docket No. 1897-90.
United States Tax Court
T.C. Memo 1992-205; 1992 Tax Ct. Memo LEXIS 242; 63 T.C.M. (CCH) 2684; April 6, 1992, Filed *242 Decision will be entered for petitioner. Brian M. Schaefer, pro se. Jonathan J. Ono, for respondent. SHIELDS
SHIELDS
MEMORANDUM FINDINGS OF FACTS AND OPINION SHIELDS, Judge: Respondent determined deficiencies in petitioner's Federal income taxes as follows: Taxable year
Deficiency
1982
$ 2,088
1983
1,231
1985
2,394
1986
2,782
The only issue is whether certain expenditures incurred by petitioner during 1982, 1983, 1984, [1] 1985, and 1986 with respect to a farming activity are not deductible as contended by respondent because (1) the farming activity was not engaged in for profit within the meaning of section 183, [2] or (2) in the alternative, such expenditures constituted nondeductible preparatory costs. *243 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioner Brian M. Schaefer resided on the Island of Kauai in the State of Hawaii when he filed the petition in this case. His Federal income tax returns for 1982, 1983, 1984, 1985, and 1986 were filed with the Internal Revenue Service Center, Fresno, California. Petitioner, a highly intelligent, well-educated, and diligent individual, moved to Kauai from Chicago during 1981. At that time he was 37 years old. Prior to this move, he had acquired in 1967 a B.A. in Electrical Engineering from the University of Waterloo, in Ontario, Canada; in 1968 a Masters in Information Science from California Institute of Technology; and in 1971 a Ph.D. in Systems Engineering from the University of Southern California. Petitioner had also been employed from 1971 through 1974 as an assistant professor of Industrial Engineering and Management Science by Northwestern University; from 1974 through 1981 as a commodity broker, and subsequently the owner of a seat on the Chicago Board of Trade; from 1977 through 1981 as the only stockholder *244 and president of It's Natural Foods, Inc., a small business corporation, which owned and operated a natural food store; and from 1978 through 1981 as the only stockholder and president of It's Natural Restaurants, Inc., a small business corporation, which owned and operated a natural food restaurant. He was often involved in more than one activity at the same time. For instance, petitioner was a commodity broker on the Chicago Board of Trade from 1974 through 1981. In addition from 1978 through 1981 he was also president of the natural food store and restaurant which together had about 35 employees. While trading in commodities and working with the natural food store and restaurant, petitioner became interested in and did research with respect to the sources of the world's supply of food and its delivery systems. From this research he noted that, while it was easy to grow food plants in the tropics, a great deal of hunger still existed in such areas. Upon noting this paradox, which he attributed to the failure of food producers to use proper planning, management, and systems, he resolved to move to a tropical location, acquire a small farm, and operate it successfully. He believed *245 that a successful operation would demonstrate the feasibility and desirability of farming in these areas. After a few trips to Hawaii and some investigation, he concluded that it was a good location for such purposes. Consequently, in 1981, he sold his seat on the Chicago Board of Trade and moved to Hawaii but soon found that the cost of land in small tracts was extremely high, being as much as $ 30,000 to $ 35,000 per acre, while leases were more reasonable. After some delay he located a small tract on Kauai, which is referred to locally as the garden island, and leased the tract in 1981 for 49 years at $ 3,000 per year. The tract contains 8 acres, 4 of which are zoned for agriculture. The other 4 acres are zoned for conservation. The agriculture portion of the land had previously been used for about 100 years to grow sugar cane but by 1981 had been abandoned for some time, and as a result, was covered with small trees and buffalo grass, an extremely tough plant which grows to heights of about 10 to 15 feet. Prior to his lease of the property, petitioner had no actual experience as a farmer. However, he had grown up in a Canadian farming community and had received some exposure *246 to farming activities by accompanying his father, a banker, on a number of business trips to local farms. Additionally, he had acquired some background information about farming during his employment as a commodity broker. In preparation for his proposed venture, petitioner did research with respect to the fruits and vegetables that he intended to grow. He also consulted with a local farmer with respect to the type of soil on his land, its fertility, and the type of equipment best suited to his needs. Additionally, he joined the Hawaii Farm Bureau, the American Farm Bureau, and the County of Kauai Farm Bureau in order to have access to their knowledge and information about farming and their discounts on fertilizer and other farm supplies. As time passed, he also consulted with the U.S. Department of Agriculture about an irrigation system. In 1982, petitioner started to work on the land that he had leased. He had two primary goals with respect to the property at that time. First, he planned to build a house with a small yard on 3,000 square feet of the property zoned for conservation. Construction of this house near the agriculturally zoned property facilitated the accomplishment *247 of his second goal, the development of that portion of the land through planting, care, and production of vegetables such as lettuce, carrots, and soy beans, as well as fruit-bearing trees. He anticipated selling the vegetables and later the fruit from the trees to local markets and stores. In 1982, he spent approximately 8 hours a day, 6 days a week, for 9 months building a house which is a simple, modest structure without any amenities even though it is valued for local tax purposes at $ 93,000. Petitioner has lived in the house with two of his children since late 1982 or early 1983. While building the house and throughout the years at issue, petitioner worked at least 20 hours per week to make the property productive by clearing the buffalo grass and undesired trees from the land, planting and caring for vegetables and desireable trees, building an irrigation system, and constructing a road through the land zoned conservation to that portion of the land zoned agricultural. At the beginning, in 1982, his agricultural activities were limited to about 1.75 acres of the land, but the land used for agriculture had expanded to about 3 acres by 1986. Since petitioner considered *248 his farming activities to be of scientific interest, he wrote and published material describing his experiences. Petitioner also received an incidental benefit in that he and his children consumed a small portion of the fruits and vegetables produced on his land. However, we are satisfied that the amount consumed was negligible and that petitioner did not engage in farming to produce vegetables and fruits for such consumption. In addition to farming, petitioner was engaged in a number of other activities. During the years in issue, petitioner continued to trade in commodities on the Chicago Board of Trade, but finding this unwieldy because of the distance he subsequently switched to trading in stocks. He also operated a computer consulting business known as "Run Computer Run" and received substantial amounts of interest income from investments. Petitioner did not maintain separate books or records for any of his activities. Instead, all of his receipts were deposited in a Merrill Lynch cash management account and all expenses including personal expenditures were paid from the account. However, the monthly statements on the account were used by petitioner to keep track of the *249 receipts and expenses associated with each activity including personal matters. In or about 1984, it became apparent to petitioner that his soil was not suitable for the production of vegetables in the organic manner he had adopted because of conditions caused in part by heavy rains in the area and in part by the extensive use of chemical fertilizers by previous owners of the property in the production of sugar cane. Consequently, he abandoned the vegetable portion of his plan but expanded the production of trees to include, in addition to fruit trees, ornamental, timber, and other trees, some of which were native to Hawaii and therefore could be grown on the land zoned conservation. By the end of 1984, he had planted over 80 different kinds of fruit trees, and by 1989 he had planted over 100 hardwoods and other kinds of trees. In the beginning of his operation, petitioner not only expected to be able to sell fruit from his fruit trees but also to obtain cuttings from the maturing trees which he could ultimately use as grafts to grow seedlings for stocking a nursery. He was unable to accomplish this goal during the years 1982 through 1986. However, by the date of trial in 1991, *250 he had developed The Native Landscape Nursery, a relatively well-stocked nursery containing numerous plants that he had grown from grafts supplied by his fruit trees such as lychies, cambolas (star fruit or star apple), avocados, and mangos. The nursery also included plants grown with grafts taken from the hardwood trees planted during his expansion in 1984, such as milos, koas, and ilimas. The wood of the milo tree is the source of the beautiful wood often seen throughout the world in wooden bowls and other ornaments. It takes about 25 years to mature but at maturity a single milo tree has a value of $ 2,000 or more. The koa tree is commonly used in Hawaii to make frames for canoes. It is a large tree which also produces valuable ornate wood which has many uses. The ilima tree is the source of the small yellow or pink flowers used to make leis. In August 1984, petitioner filed with respondent a Form 5213 in which he elected pursuant to section 183(e) to postpone the determination of whether his farming activities were engaged in for profit until after the end of his fourth year. For the years 1982 through 1986, petitioner reported income and losses from farming, trading in *251 commodities and stocks, computer consulting, and interest in the following amounts: Year
Farming
Trading
Consulting
Interest
1982
($ 10,103.47)
$ 102,161.74 $ 16,079.50
1983
(12,204.35)
(42.02)
22,903.90
1984
(10,093.00)
(6,005.00)
($ 5,680.00)
15,745.00
1985
(8,954.00)
14,885.81 (6,543.58)
18,210.81
1986
(8,656.36)
(1,274.00)
11,439.99 14,745.69
In some of the above years, petitioner also reported relatively small amounts of income or loss from other sources. In spite of his losses, which continued through 1988, petitioner was able to carry on his farming activities with profits from other activities and with money he had acquired in 1981 from the sale of his seat on the Commodity Exchange and the sale of other assets. On Schedules F to his income tax returns for 1982 through 1986, petitioner claimed deductions for the following items: (1) Land rent; (2) repairs and maintenance; (3) vegetable seeds and plants purchased; (4) supplies purchased; (5) gasoline, fuel, and oil; (6) taxes (1983 only); (7) insurance (1983 only); (8) utilities (1983 only); and (9) depreciation. In 1987, petitioner incorporated his farming activities under the *252 name "The Nature Corporation", but continued thereafter to the date of trial to supervise and control such activities as the only stockholder and active officer of the corporation. The record does not contain copies of the corporation's income tax returns for 1987 and 1988. However, at trial petitioner admitted that the corporation had net losses from the farming operation for these years in the respective amounts of $ 7,068 and $ 5,110. The record does contain copies of the corporation's returns for 1989 and 1990. The 1989 return reflects gross receipts from farming of $ 6,476 and taxable income of $ 6,092 before deduction of the $ 5,110 net operating loss in 1988. The 1990 return reflects gross receipts of $ 14,882 and taxable income of $ 7,024. The record also contains balance sheets prepared by petitioner for The Nature Corporation at the end of 1989 and 1990 which reflect inventories of growing trees and plants in the amount of $ 19,166 and $ 36,474, respectively. Petitioner testified that these figures were based on the actual costs directly attributable to the trees and plants growing on the land and did not include any deductible expenditures or any estimated increase *253 in value due to growth. In the notice of deficiency, respondent determined that the losses attributable to petitioner's farming activities are allowable only to the extent of the income reported therefrom because such activities were not engaged in for profit. At trial and on brief, respondent contended in the alternative that if petitioner is found to have engaged in the activities for profit, the questioned expenditures represent nondeductible capital costs made by petitioner in preparation for commencing a business. Respondent's alternative argument was first raised in his trial memorandum which was mailed to petitioner on May 31, 1991, or 18 days before the trial. OPINION 1. Farming Activity
It is well established that in determining whether an activity is engaged in for profit, a reasonable expectation of profit is not required, but the relevant facts must establish that the taxpayer entered into and continued the activity with the actual and honest objective of earning a profit. Fox v. Commissioner, 80 T.C. 972, 1006 (1983), affd. without published opinion 742 F.2d 1441 (2d Cir. 1984), affd. sub nom. Barnard v. Commissioner, 731 F.2d 230 (4th Cir. 1984), *254 affd. without published opinions sub nom. Hook v. Commissioner, Leffel v. Commissioner, Rosenblatt v. Commissioner, Zemel v. Commissioner, 734 F.2d 5, 6-7, 9 (3d Cir. 1984); sec. 1.183-2(a), Income Tax Regs.; see also Hirsch v. Commissioner, 315 F.2d 731 (9th Cir. 1963), affg. T.C. Memo. 1961-256; Brannen v. Commissioner, 78 T.C. 471, 501 (1982), affd. 722 F.2d 695 (11th Cir. 1984). In making the determination of whether or not an activity is engaged in for profit, all relevant facts and circumstances must be considered and greater weight is to be given to the objective facts than to the taxpayer's after-the-fact statements of intent. Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); Flowers v. Commissioner, 80 T.C. 914, 931-932 (1983); sec. 1.183-2(a), Income Tax Regs.
Under section 183(d), if the gross income from an activity exceeds the deductions attributable to that activity in each of 2 or more years in a period of 5 consecutive years, the activity is presumed to be engaged in *255 for profit. At the taxpayer's election, the determination of whether the presumption applies will not be made until after the close of the fourth taxable year following the taxable year in which the taxpayer first engaged in the activity. Sec. 183(e)(1). In the present case, petitioner made the election under section 183(e) but his farming activity did not earn a profit in any of the years at issue. Consequently, petitioner does not have the benefit of the presumption provided by section 183(d) and he has the usual burden of proof on the issue. Rule 142(a); Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Section 1.183-2(b), Income Tax Regs., sets out the factors which have been considered relevant by this and other courts in determining whether an activity is engaged in for profit. The factors are as follows: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors with respect to the activity; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that an asset used in the activity *256 may appreciate in value; (5) the success of the taxpayer in carrying on the same or similar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of profits, if any, that are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation enjoyed by the taxpayer from his involvement in the activity. The above factors are not exclusive and are applied according to the unique facts of each case. Sec. 1.183-2(b), Income Tax Regs. No one factor or group of factors is determinative. Golanty v. Commissioner, supra at 426-427. We discuss below each of the factors and their application to this case. (1) In evaluating the manner in which a taxpayer has conducted an activity for the purpose of determining whether the requisite profit objective was present, it is necessary to ascertain whether or not the taxpayer maintained accurate records; conducted the activity in a manner substantially similar to comparable businesses which are profitable; and made changes where necessary in an attempt to improve profitability. Engdahl v. Commissioner, 72 T.C. 659, 666-667 (1979); *257 sec. 1.183-2(b)(1), Income Tax Regs.
In the present case, petitioner did not maintain separate books and records for his farming operation. However, we have found that the monthly statements that he received as a result of his Cash Management Account were quite detailed and the amounts reflected on those statements can be quickly and easily separated in order to determine the amount of profit and loss from each of his activities. Therefore, from the record as a whole, we are convinced that the information provided by those statements was sufficient to permit an individual with the education and experience of petitioner to maintain control over and to manage his farming activities in a businesslike manner. We have also found that when in or about 1984, petitioner learned that his original plan to produce organic vegetables was not going to be profitable he discarded the vegetable portion of his plan and increased the tree portion. This change was necessitated by soil conditions of which he was not aware at the beginning of his farming activity that made it impossible for him to produce organic vegetables in a cost efficient manner. This change in his operation tends to indicate *258 that petitioner's farming activity was engaged in for profit. Petitioner readily admitted that to his knowledge there were only a few, perhaps no more than three or four, operations that were somewhat similar to his when he started in 1982 but by the date of the trial there were about twelve. Therefore, we consider this factor to have little if any bearing on the issue of whether his farming activity was operated for profit. (2) Petitioner concedes that he had no actual experience in operating a farm prior to his entering into the lease of the land in Hawaii. Moreover, it is apparent from the record before us that while his growing up in a farming community and the incidental knowledge of farming conditions gained by him in the trading of commodities provided him with some general information with respect to farming, such information was not sufficient to qualify him to operate a profitable farm. However, because of his lack of prior experience, he prepared for the farming activity by the study of its accepted business, economic, and scientific practices. He also consulted with a local farmer regarding farming techniques used in the area and the type of equipment needed. Later *259 he also consulted with the agricultural department about the construction of an irrigation system. Additionally, prior to moving to Hawaii petitioner did research with respect to the type of fruits, vegetables, and trees that could be grown in the area. Moreover, during the years 1982 through 1986, he was a member of farm bureaus in order to take advantage of their discounts on supplies and to have access to their knowledge and advice. Such conduct is evidence of an objective to earn a profit. Sec. 1.183-2(b)(2), Income Tax Regs.
Petitioner also contends that his lack of any previous farming experience should not weigh against him since, as set out in our findings, he had successfully operated other businesses without any prior experience. We agree that his demonstrated success in other ventures tends to support a finding that he sincerely believed that he could profitably operate a farm and that he undertook the activity with an objective to do so. See Sampson v. Commissioner, T.C. Memo. 1982-276. (3) Petitioner spent at least 20 hours per week clearing and preparing the land, selecting and planting trees and vegetables, and maintaining his property. *260 Such dedication in carrying on an activity which obviously includes a great deal of dirty physical labor by an individual with the education and background of petitioner is also indicative of an objective of earning a profit. Sec. 1.183-2(b)(3), Income Tax Regs.
(4) An expectation of profits from the appreciation in the value of the assets used in an activity may indicate that a taxpayer had the objective to earn a profit. Sec. 1.183-2(b)(4), Income Tax Regs. As set forth in our findings petitioner's records reflected an inventory at cost of growing trees and plants at the end of 1989 and 1990 of $ 19,166 and $ 36,474. When the growth which occurred with respect to the trees planted over the years 1982 through 1990 is taken into account with the profits earned in 1989 and 1990 of over $ 13,000, it is conceivable that the value of the inventories plus such profits was equal to if not greater than the losses claimed by petitioner for 1982 through 1988. In any event, it is apparent that the trees and plants produced by petitioner in his farming activities appreciated to some extent in value during the years in issue and thereafter to the date of trial. We conclude, therefore, that *261 this factor weighs in favor of petitioner. (5) Petitioner's lack of any previous experience in farming or a similar business weighs in favor of respondent. Sec. 1.183-2(b)(5), Income Tax Regs. However, as indicated at (2) above the weight to be attributed to such fact is reduced by petitioner's demonstrated ability to successfully operate other businesses in which he had no previous experience. (6) Petitioner's losses in his farming activity during all of the years in issue were attributable to normal operating expenses and not to nonrecurring startup costs or unforeseen adverse circumstances beyond his control. Usually in the absence of unforeseen adverse circumstances the continued operation of an activity which remains unprofitable beyond a reasonable startup phase is considered an indication that the activity is not engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs. However, petitioner's perseverance in this case even through 1988 must be considered evidence of his objective to earn a profit in the light of the net profits of $ 6,092 and $ 7,024 earned by his successor, The Nature Corporation, in the same operation during 1989 and 1990. A history of profits from *262 an activity in years subsequent to the years in issue can and often is considered an indication that the activity by the taxpayer in earlier years was engaged in with the objective of earning a profit. See Abrams v. United States, 449 F.2d 662, 663 (2d Cir. 1971); see also Feistman v. Commissioner, T.C. Memo. 1982-306. (7) The absence of net profits earned from the farming activity in 1987 and 1988, the 2 years following those in issue, have to be considered as weighing against petitioner especially where as here there is evidence that petitioner had gross receipts from his farming activity in only 1 year in the period prior to 1989. Sec. 1.183-2(b)(7), Income Tax Regs.
(8) and (9) To carry on his farming activity, petitioner used capital which he had at the time that he arrived in Hawaii plus interest earned on such capital and income earned from trading in commodities and stocks and from computer consultation. It is true, as contended by respondent, that substantial income from sources other than the activity under consideration may tend to indicate that an activity is not engaged in for profit especially where the taxpayer derives some *263 personal benefit (such as a tax savings) or recreation from the activity. Sec. 1.183-2(b)(8), Income Tax Regs. Here, however, the personal and recreational benefits derived by petitioner from the activity in dispute were relatively minor. He lived on a relatively remote and inaccessible island in a home which he constructed himself. Moreover, he devoted a substantial amount of personal time and effort to farming activities which included clearing land; planting trees, shrubs, and other plants; harvesting fruits and vegetables; and other activities which are usually considered more labor than recreational. It is also noted that with the exception of 1982 his income from other sources was relatively modest and not sufficient in amount to permit him to realize substantial tax benefits from the farm losses. From all of the foregoing, and in spite of the fact that some of the factors discussed above weigh in favor of respondent, we are convinced from the record as a whole that petitioner had an actual and honest objective of earning a profit from his farming activities during the years at issue. 2. Nature of Costs Incurred in Farming Activity
Respondent next argues that *264 even if the disputed expenses were incurred by petitioner in an activity engaged in for profit, they are still not deductible because they constitute capital expenditures. This argument was first raised in respondent's trial memorandum which was mailed to petitioner 18 days before trial. Petitioner contends that since the notice of deficiency was limited to a determination by respondent that the disputed expenses were not deductible because petitioner was not engaged in an activity for profit, we should refuse to consider respondent's second argument. In rebuttal, respondent contends: (1) That petitioner has not demonstrated any surprise or prejudice to his ability to present his case as a result of the alternative argument; and (2) that despite the late date at which respondent raised this issue, it was not a new matter on which respondent is required to bear the burden of proof. It is well settled that as a general rule respondent is required to inform petitioner of all of the theories that he intends to rely on at trial in the notice of deficiency, an answer, or an amended answer. Stewart v. Commissioner, 714 F.2d 977, 986 (9th Cir. 1983), affg. T.C. Memo. 1982-209; *265 Seligman v. Commissioner, 84 T.C. 191, 198 (1985), affd. 796 F.2d 116 (5th Cir. 1986). However, where the record reveals that petitioner had adequate notice that respondent intended to rely on a new theory, we will consider that issue even though it was not introduced by respondent in the preferred manner, i.e., in the deficiency notice, the answer, or an amended answer. In the present case, respondent's trial memorandum containing the alternative argument or theory, which for the moment we will assume is new matter, was mailed to petitioner more than 2 weeks before the trial. Furthermore, notice of respondent's intention to rely on the alternative theory was specifically spelled out in the memorandum. We conclude, therefore, that petitioner received adequate notice and was not unduly prejudiced in his ability to refute the new argument at trial. See Stewart v. Commissioner, supra at 985-990 (finding that the taxpayer received adequate notice even though respondent's trial memorandum containing a new theory was not filed until the day before trial); cf. Fox Chevrolet v. Commissioner, 76 T.C. 708, 735 (1981) *266 (finding surprise and prejudice barred respondent from relying on a new theory where respondent in a pretrial conference held the week before trial stated that he was considering a new theory but did not give any specific notice of his intention to do so). Having decided above that respondent's alternative argument can be considered, we must now determine which party has the ultimate burden of persuasion on the issue. With a few exceptions, petitioners have the burden of proof on matters before this Court. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). However, one of the exceptions is where respondent introduces a new matter which did not appear in the deficiency notice. Rule 142(a). A theory not set forth in the deficiency notice is a new matter when it alters the original deficiency or requires the presentation by petitioner of different evidence. Achiro v. Commissioner, 77 T.C. 881, 890 (1981). In the present case, respondent relies on Rev. Rul. 83-28, 1983-1 C.B. 47, in support of the alternative contention that petitioner's expenses were nondeductible preparatory costs. In the ruling, it is stated *267 that preparatory costs are those incurred by a taxpayer "prior to raising agricultural commodities or that otherwise enable a grower to begin the growing process". By contrast deductible developmental costs are stated to be those "incurred by a grower so that the growing process may continue in a desired manner". Rev. Rul. 83-28, 1983-1 C.B. at 48. In order to qualify under the ruling for deductible developmental costs, it would be necessary for a taxpayer to present evidence that he was the grower of agricultural products, that the costs were incurred to continue the growing process in a desired way, and that they were not incurred to begin the growing process or to enable the taxpayer to begin that process. From the record before us, it is apparent that up to not more than 18 days before trial respondent's agents, and subsequently his counsel, led petitioner to believe that to prevail on the only issue set forth in the deficiency notice, all petitioner had to do was to come forth with sufficient objective evidence to comply with the nine factors set out in sec. 1.183-2(a), Income Tax Regs. Unlike Rev. Rul. 83-28 the nine *268 factors in the regulation do not include any consideration of whether the disputed expenses were incurred before or after an agricultural commodity was being raised by petitioner, whether they were incurred to begin the growing process with respect to such commodity, or were made to continue growing the commodity in a desired manner. Therefore since the evidence required to refute respondent's alternative theory based on Revenue Ruling 83-28 is clearly different from the evidence required to refute the theory set forth in the deficiency notice, respondent's alternative theory constitutes a new matter on which she has the burden of proof. Achiro v. Commissioner, supra.
At trial, respondent did not present evidence to prove whether petitioner's expenses were incurred to begin the growing process, to enable petitioner to begin the growing process, or to continue the growing process. Consequently, respondent has failed to carry her burden of proof because the record does not contain sufficient evidence to support her alternative theory. Decision will be entered for petitioner. Footnotes
1. The deduction of the farming expenses claimed by petitioner for 1984 was also disallowed by respondent but its disallowance did not result in a deficiency for that year. ↩
2. Unless otherwise specified, all section references are to the Internal Revenue Code of 1954 in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩